[S. F. No. 16659.   In Bank.   Apr. 2, 1942.]

ALGERDAS N. CHELEDEN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent

Carey Van Fleet and Alfred J. Hennessy for Petitioner.

W. Eugene Craven and Joseph J. Webb for Respondent.

THE COURT.—By this proceeding petitioner seeks to have reviewed the recommendation of the Board of Governors of The State Bar that he be disbarred from the practice of the law by reason of conduct involving moral turpitude, and of violation of his oath and duties as an attorney at law. The proceedings heretofore had were based on six separate orders to show cause, which were issued during the period from February 16, 1940, to December 9, 1940. In the aggregate eight charges were embraced therein, each containing an accusation of professional misconduct by petitioner.

On May 8, 1940, petitioner entered a plea of guilty to a charge of petty theft, a misdemeanor involving moral turpitude. He was convicted, but was thereafter granted probation for the period of one year. On receipt of a certified copy of the record of conviction on such charge, this court on January 23, 1941, entered an order by which petitioner was suspended from the practice of the law until further order of the court. Following such proceeding, The State Bar conducted an independent investigation with respect to the misconduct with which petitioner was charged in the several orders to show cause. After hearings were had thereon, the examining committee found petitioner guilty of all the charges except two which were embraced in Proceeding No. 1261 and which were subsequently dismissed. Thereafter, the Board of Governors adopted the findings thus made and approved the recommendation of the examining committee that petitioner be disbarred.

The factual situations on which the several charges were found to be sustained are hereinafter referred to, as follows:

S. F. No. 1246 PETTY THEFT CHARGE

On or about December 4, 1939, petitioner obtained from one Cameron, the barkeeper of a liquor tavern in the town of San

Mateo, the sum of $15, for which he gave a check in that amount signed by him as drawer. At the hearings had in these proceedings, petitioner admitted that at the time he cashed the check he had no funds on deposit in the bank on which it was drawn, and claimed it was intended to constitute merely an evidence of indebtedness in the nature of an "I. O. U." Cameron testified that such was the understanding, although he admitted the check was placed in the cash drawer with other receipts and that on the following day it was endorsed and deposited in the bank together with other currency and checks. The bank refused to honor the check and it was returned to the owner of the tavern. Petitioner was requested to repay the sum of $15, which he failed to do, and on March 16, 1940, at the instance of Cameron, who laid a complaint before the District Attorney of San Mateo County, petitioner was charged with a violation of section 476a of the Penal Code. Thereafter, and on May 8, 1940, the charge was dismissed and a new complaint charging a violation of section 484 of the Penal Code (petty theft) was issued against petitioner. He entered a plea of guilty to the charge and was convicted, but was granted probation on condition that he make restitution of the sum of $15. Petitioner testified that he repaid such sum and that he had entered a plea of guilty in order to avoid being tried in the superior court. The order of suspension by this court, heretofore referred to, was based on such conviction.

### S. F. No. 1246  SECOND COUNT

On March 12, 1940, petitioner visited a restaurant and bar in Burlingame, California, and in the presence of the bartender, R. E. Burkhead, he wrote a check in the sum of $25 which he made payable to himself, signing the name of Stephen Von Nagy as the drawer thereof. He endorsed the check and presented it to Burkhead, the latter testifying that petitioner told him he was the attorney for Von Nagy, who was out of town, and that he was authorized to draw checks on Von Nagy's account. Burkhead cashed the check for petitioner and it was deposited in the bank the following day, but in due course was returned by the bank for lack of an account in the name of Von Nagy. Thereupon petitioner was requested to repay the $25 and on his failure to do so Burkhead thereafter discussed the matter with the District Attorney of San Mateo County, although no charges were brought against petitioner who later redeemed the check.

Petitioner testified he had received Von Nagy's permission over the telephone to use the latter's name in signing a check; that it was not intended that the check would be deposited in the bank but that it was to be held as a memorandum of indebtedness until petitioner repaid the $25. According to Von Nagy's testimony, petitioner had previously represented him in two legal matters, and on one occasion during a period of time in which he owed petitioner the sum of about $35 the latter had telephoned him and asked permission to use his name for the purpose of raising some money. He testified that he gave petitioner such permission but was not informed of the manner in which his name would be used; that at no time had he authorized petitioner or anyone else to sign his name to a check, and that he had no account in the bank on which such check was drawn.

S. F. No. 1235  THE PULLEY MATTER

On or about June 26, 1940, petitioner entered into an agreement to represent William C. Pulley, who was then awaiting trial in the federal court on a charge of forgery. At that time petitioner was paid the sum of $50 and, Pulley contended, it was understood he was to receive another $50 if an acquittal were secured on the criminal charges. However, on the following day petitioner asked for and received from Pulley an additional $50 which he claimed would be required for the services of a handwriting expert, one Inspector LaTulipe. Petitioner then signed a written receipt indicating he had received the sum of $50 as a retainer fee and the $50 intended for the services of the handwriting expert, also that he was to receive another $50 if Pulley were acquitted on the criminal charges. Petitioner did not engage the services of LaTulipe or of any other handwriting expert, nor did he offer to return to Pulley the $50 he had received for such purpose. Pulley testified that a few days after he had given petitioner the second $50 he asked him if LaTulipe had been engaged to do the work, to which petitioner responded in the affirmative, stating further that LaTulipe had expressed the opinion that the handwriting on the instruments assertedly forged by Pulley was not in fact his handwriting and that LaTulipe would so testify at the trial. Mrs. Pulley testified that petitioner told her he had talked with LaTulipe and had paid him the $50, but that LaTulipe had stated he was too busy to take the case. Petitioner denied having told either Pulley or his wife that he had talked with

LaTulipe—contending he had ascertained the services of La-Tulipe were not available, and that he therefore attempted to secure the services of another handwriting expert. He stated that he had kept the $50 which was intended to be expended for LaTulipe's services for the reason that such sum was due him as a part of his fee (which he testified was the sum of $150), although, he asserted, he had intended to advance the $50 for LaTulipe's services had he been able to secure them. He stated that the receipt which he had signed to the contrary "did not mean anything." On July 3, 1940, petitioner made another demand upon Pulley for $50, assertedly required for the purpose — as testified to by Pulley and his wife—of defraying the expenses of entertaining certain federal investigators who, petitioner stated, were acting for the government in connection with Pulley's case. Pulley refused to advance the money requested. Petitioner denied that he requested the $50 for the purpose mentioned, but stated that such sum was due him as the balance of his fee, which he claimed he was entitled to receive at that time because of certain misstatements Pulley had made to him in connection with his case. On July 11, 1940, Pulley made a complaint concerning petitioner's conduct to United States District Judge Roche, before whom his case was pending, and at a hearing held on the charges made against him petitioner agreed to withdraw as Pulley's attorney and to refund to the latter, within a stated period, the sum of $100. The money was not so refunded and on July 27, 1940, Judge Roche made an order by which petitioner was denied the right to appear in that court as an attorney until further order of the court.

S. F. No. 1201  THE RUELLE MATTER

On September 15, 1939, petitioner agreed to institute an action on behalf of Mrs. Ora Ruelle, who resided in Mendocino County, to recover possession of a tractor and certain other farming equipment belonging to her, which assertedly had been wrongfully seized under judicial process. At the outset Mrs. Ruelle paid him the sum of $100, with the understanding that the action would be filed immediately. During the period from September 15, 1939, to February 1, 1940, she wrote petitioner several letters and made frequent trips to his office in San Francisco for the purpose of urging him to file her action. On December 11, 1940, upon his repre-

sentation that $25 was needed in connection with bonds to be used in the action, she paid him such additional sum. The money was not so used, nor was it returned to her. Contrary to her claim in that respect petitioner testified that after he had received the $25 Mrs. Ruelle had instructed him not to file bonds in the action, but had told him he could retain the money to apply on his fee. On each of at least four occasions prior to February 1, 1940, petitioner sent a telegram to Mrs. Ruelle stating that he would file the complaint in her action on a definite date, but in each instance he failed to do so. On February 1, 1940, Mrs. Ruelle lodged charges of misconduct against petitioner with The State Bar. However, on that day petitioner filed the complaint in Mrs. Ruelle's case and thereafter, on his representation to her that he would proceed promptly with the prosecution thereof, and at his request, she withdrew the charges she had made against him. In due course, a demurrer to the complaint was sustained with leave to amend. Petitioner filed no amended complaint and a default was taken against Mrs. Ruelle. She then secured the services of another attorney, and as a result of his efforts the default was set aside. Petitioner claimed the delay in filing the complaint was due to his efforts towards securing a settlement. However, the evidence showed that on December 13, 1939, Mrs. Ruelle had instructed him to file the action immediately, and that thereafter his delay in the matter was contrary to his client's instructions. He failed to advance any meritorious reason for having permitted the default to be entered against his client—the evidence indicating that at the time the default was entered petitioner was the attorney of record for Mrs. Ruelle.

## S. F. No. 1202 DeBARBE MATTER

On September 28, 1939, petitioner was paid the sum of $100 by J. J. DeBarbe of the city of Santa Rosa, under an agreement that he was to file bankruptcy proceedings in DeBarbe's behalf. There was evidence to show that on such occasion petitioner was given the names of the creditors and full information with respect to the financial status of his client, and that it was understood the necessary papers would be ready for filing within a period of two weeks. During the following four months DeBarbe made twelve trips from Santa Rosa to petitioner's office in San Francisco for the purpose of inquiring with regard to the progress of the bankruptcy matter and on each occasion, DeBarbe stated, petitioner in-

formed him the papers would be ready for filing in about two weeks. On February 1, 1940, DeBarbe lodged a complaint against petitioner with The State Bar. On February 14, after petitioner had learned of the complaint so made, he prepared a petition in bankruptcy on behalf of DeBarbe which the latter signed. Petitioner then typed a letter to The State Bar requesting dismissal of the proceedings against him and, at petitioner's request, DeBarbe signed such letter. In defense of the charge of neglect in this matter petitioner claimed the delay in preparing the necessary papers was due to the fact that he had not been furnished with all the required information with respect to DeBarbe's financial status. Petitioner contended also that the sum of $100 which had been paid to him on September 28 was not advanced by DeBarbe but by a friend of the latter, and that such sum was intended to serve as partial payment for prior services assertedly performed by petitioner on behalf of DeBarbe. No substantial evidence was adduced to support petitioner's claims in either of those respects.

S. F. No. 1238 THE KENYON MATTER

On July 8, 1940, petitioner was engaged by Mrs. Frances Kenyon to represent her in divorce proceedings. She testified he was to prepare the necessary papers the following day; that it was agreed his fee would be $65, including costs, and on that date she paid him the sum of $25 on account of his fee (which he told her she could pay in installments); and that she thereupon signed a verification of the proposed complaint and supplied him with the facts on which she predicated her right to a divorce. Mrs. Kenyon further stated that on July 12, in response to petitioner's request, she paid him the sum of $5, and again on July 15, an additional $5, which amounts, he informed her, were required to secure a "certified decree." No action was filed, however, and on July 29, 1940, Mrs. Kenyon made a complaint against petitioner to The State Bar. When petitioner learned of such complaint he telephoned to Mrs. Kenyon and stated he would file the action without further delay. She then informed him she did not desire to have him represent her further, whereupon he promised to immediately refund the moneys paid to him in the sum of $35. However, he failed to make such repayment then or at any time thereafter. According to Mrs. Kenyon's testimony, petitioner told her it would not be necessary for her to appear at the preliminary hearing before

The State Bar, and intimated that if she did appear he would cause trouble for her. Petitioner contended it was understood he was to receive the entire sum of $65 before he commenced the divorce proceedings, and that the initial payment of $25 and the additional $10 which Mrs. Kenyon later paid him were to be credited as part of his fee. He further contended he had delayed instituting the proceedings for the reason that the facts on which the action would be predicated were. "vague," and that he needed additional factual data before commencing the action, in order to circumvent any possible claim of collusion between Mrs. Kenyon and her husband.

Among other things, some of the matters just related indicate that during a considerable portion of his brief period of practice of the law petitioner has had frequent difficulties with his clients concerning money transactions and his failure to give reasonably prompt attention to the matters confided to his care. His prior record, which this court will consider in proceedings of this character (*Hennessy* v. *State Bar*, 18 Cal. (2d) 685 [117 P. (2d) 326]; *Kennedy* v. *State Bar*, 13 Cal. (2d) 236 [88 P. (2d) 920]; *Petersen* v. *State Bar*, 16 Cal. (2d) 57 [104 P. (2d) 769]), indicates a history of acts and conduct growing out of the attorney and client relationship similar to those last discussed. In each of seven previous instances complaint had been made to The State Bar —although after formal proceedings were had on two such complaints the proceedings were dismissed and on the remaining complaints no formal proceedings were instituted.

Petitioner is thirty-six years of age and was admitted to the practice of the law in October, 1934. He is now employed in the shipyards in the bay region. He is married and has three small children. The present record shows that during the times involved in the charges here under review his family was often in want. It may be, therefore, as is suggested by the record, that in some instances where petitioner failed to return to his clients small sums of money which he had secured from them on the representation that such moneys were needed for costs or expenses incidental to their cases but were not so used, he was motivated by the necessities of his family in retaining such sums. However, on this record such a fact, even if it were satisfactorily established, cannot operate against the making of an order of disbarment at this time where it is shown that in addition to the existing order of suspension an independent investigation by The State Bar

has disclosed further acts of professional misconduct which warrant the making of such an order.

It is therefore ordered that petitioner be disbarred from the practice of the law in this state and that his name be stricken from the roll of attorneys, the order to become effective thirty days after the filing of this decision.